Mr. Justice Clayton
delivered the following dissenting opinion.
The only question in this case is, whether the action is barred by the statute of limitations. Its solution depends upon the construction to be given and the effect to be ascribed to the Briscoe bill. This will make it necessary to examine its provisions with some degree of minuteness.
The sixth section enacts, that “ upon the filing of an information in the nature of a quo warranto against a bank, it shall be the duty of the clerk, as a matter of right, to issue an injunction to restrain all persons from the collection of any demands claimed by such bank until the said information be finally tried and determined, and said injunction shall have the office and effect of an injunction in chancery.”
*517 The seventh section directs that “ none of the provisions of the act shall be so construed as to prevent any bank, or assignee, or any of its officers or agents, from suing out attachments in the same manner, and for the same cause, that other creditors are allowed lawfully to do.”
The eighth provides, that upon judgment of forfeiture against any bank, the debtors of such bank shall not be released by such judgment from their debts and liabilities to the same; but it shall be the duty of the court rendering such judgment to appoint one or more trustees to take charge of the books and assets of the same, and to sue for and collect all debts due to such bank.
These are the clauses which mainly bear upon the point.
In the outset, it will be proper to state what has already been said by the members of this court, as to the prohibition contained in the 6th section, to the bringing of suits by the bank, after the issuance of an information and injunction against it. In the Bank of Rodney v. The State of Mississippi, (4 S. & M. 485,) Judge Thacher said, “It has been urged that the injunction deprives the bank of the right to sue, and thereby abridges the duration of that franchise. The right of the bank to sue, is derived from its charter. As has already been said, the information makes a prima fade case of forfeiture; a forfeiture annuls all the rights of the bank, including the right to sue; the injunction therefore restrains only the wrongful'.use of that franchise. By enjoining the bank from the collection of its assets, it is thereby most effectually deprived of the power to waste them.”
Clayton, J., said, “it is insisted that the writ, thus issued, impairs the obligation of the charter as a contract, because by it the bank is invested with the power to sue, in the usual terms. The power to sue for and collect its debts, is indisputable to the existence of a bank of discount. The question then is, whether this right can be restrained, before a judgment of forfeiture, in any. other way than by the interposition of a court of equity.” The opinion then goes on to uphold the provision as constitutional, because it is declared,'that the injunction is to have the *518 office and effect of an injunction in chancery, is therefore properly to be returned into chancery, and to be there decided upon as any other injunction in chancery. Ib. 494 et seq. It is assumed throughout, that the bringing of suits is prohibited, as •well as the collection of debts in any other mode.
The chief justice said, “ It is insisted that the bank, by its charter, has the power to sue, and that it is deprived of this right by injunction. The act only declares that the bank shall nor collect, not. that it shall not sue. But suppose it to extend to suits. It does not violate any right granted by the charter; it merely postpones the remedy, on the supposition that the corporation has lost its right to sue, or ought not to exert it; but it is a legal suspension, if warranted by the facts, and if not so warranted, the corporation may have a speedy remedy.” Ib. 508,509.
From this, view of that case, it will be seen that two of the judges expressed the opinion, that the sixth section does prohibit the institution of suits from the time of the issuance of the injunction, until the quo warrtínto is finally disposed of; and that the chief justice, giving no positive opinion upon the point, yet sustained that portion of the Briscoe bill, conceding that the opinions of the others in this regard was correct.
In the case of Nevit v. The Bank of Port Gibson, 6 S. & M. 513, nothing was directly said upon this point. But it was held by a majority of the court, that “ a judgment of forfeiture and the appointment of trustees under the act, is an assignment by operation of law of all the property and assets of the bank to the trustees for the benefit of creditors, which relates back to the issuance of the injunction, and preserves the assets from that time for the creditors.” If this assignment by law takes effect by relation from the issuance of the injunction and quo warranto, and vests the assignees with the property and effects from that period, it would seem to follow that no suit could be sustained by the bank during the pendency of those proceedings. Otherwise the assignees could not occupy the position which the bank did, at the issuance of the process.
When we advert to the provisions of the statute itself, this *519 construction, it seems to me, is clearly borne out. The seventh section, by way of exception, expressly authorizes suits by attachment to be commenced when a proper case occurs. This carries with it very strongly the idea, that suits were not to be commenced under any other circumstances.
Suit is the compulsory process of collection, its object is execution, the “finis et effectus legis,” the end and effect of the law. The prohibition of the end to be obtained, would seem to imply the prohibition of the means. The bank is not to collect; if this does not prevent the bringing of suits, where is the suit, if brought, to stop ? The manifest intention is, that the money shall not be paid to the bank. If we say it may sue and obtain judgment, shall we then say it shall not issue execution ? If we say that execution may be issued, shall we say that the sheriff may collect, but not pay over the money? In short, can we say any thing else but that suits are restrained, unless we go farther, and impose some arbitrary limit not contained in the statute?
The effect of an injunction in chancery is to stay proceedings at law, in the precise condition in which they exist, at the time of its issuance, unless there be some special order, or some general statute to the contrary. The party may be required to confess a judgment, or waive a defence at law, before the injunction is granted. A statute may make a release of errors at law, a condition precedent to the granting of the injunction. In the absence of all such requisitions, the injunction arrests all progress, and keeps matters in the state they were when it issued. The injunction, under this act, is to have the office and effect of an injunction in chancery. The legislature gives this effect to it. Any breach of it would have been punished by attachment. If suits had been brought, it would, in my view, have constituted a violation of the injunction and of the law. The court, upon application, would have punished such violation, and compelled obedience, even to the extent of compelling a dismission of the suit. The sixth section amounted to a prohibition of suit by law for certain purposes, and it operated a necessary exception, by legislative enactment, to the running of the statute of limitations.
*520 The decision in Nevit v. Bank of Port Gibson, 6 S. & M. 513, that the constitutionality of this sixth section could only be sustained on the ground that it preserved all the assets of the banks during litigation for ultimate distribution among the creditors, rests upon the assumption that it stays all action upon the part of the banks, and preserves their effects in the precise condition in which they were when the injunction and quo warranto issued. It would present a singular result, if the very law, which, by the construction placed upon it, was intended to preserve the assets during litigation, should yet fall so far short of its object as to prove the means of discharging the debtors from their liabilities, in consequence of the time which elapsed during such litigation.
In Planters' Bank v. Bank of Alexandria, 10 Gill & Johns. 346, it was decided, “ That if the defendant, a corporation, cease to be subject to suit by the provisions of an act of assembly, the statute of limitations would be no bar to the claims of creditors.”
. In Abbott v. McElroy, 10 S. & M. 102, this court said, “The law cannot be supposed to be so inconsistent as to prohibit suit, and at the, same time to permit a bar to run.” It is this principle Avhich governs the decisions in regard to executors and administrators. ' Dowell v. Webber, 2 S. & M. 452; Abbott v. McElroy, above cited. The statute of limitations is suspended during the first nine months after administration granted, because in that period no suit can be maintained against the administrator.
The principle here is precisely the same. The legal suspension of the right to sue, by act of the legislature, is what suspends the statute of limitations. The fact that the time of suspension is definite or indefinite, cannot vary the principle. We cannot suppose that the legislature Avould prohibit suit, and permit the statute to run during the continuance of such prohibition. I think it is already settled by this court, that the sixth section does amount to a prohibition of suit in the given case, and that the statute does not run during the pendency of the injunction.
It may be necessary to say a few words in explanation of the *521 cases of Robertson, Trusteee, v. Hoy, 12 S. & M. 567, and Commercial Bank of Manchester v. Waters, 10 Ib. 559. The latter of these holds, that for breach of an injunction, by the levy, of an execution, the remedy is not by supersedeas to stay it, but by attachment against the party. The other holds, that a court of law will not dismiss a suit brought in violation of an injunction, but will leave the party injured to his remedy by attachment against his-adversary. These cases only recognize a very familiar principle, that every court must watch over and protect its own process. In case of a breach of injunction, the court of chancery will punish the breach and enforce obedience. It may require the party to dismiss a suit brought in violation of its mandate, and to restore’things to their previous condition. The injunction operates on the person of the suitor, not on the court in which the suit is brought; hence, the remedy is against the person who is guilty of the breach. Hence there is no precedent of a plea in a court of law which sets up the pendency of an injunction, either in abatement or in bar of a suit at law. For these reasons, it was held, in the two cases cited, that the circuit court had not the power to dismiss the suit. It might very properly refuse to permit the party to proceed, but thp only way in which a dismission can be compelled, is by attachment from the court having jurisdiction of the injunction, against the party for contempt. On that process the court would compel obedience to its order.
It is true that an injunction does not usually stop the running of the statute of limitations. The remedy in such case is with the court in which it is pending, which may either dissolve the injunction, or so modify it, as to authorize the suit at law, or require a confession of judgment at law. But this case is different. The statute provides that collections shall not be made during the pendency of the quo warranto, which a majority of this court held to prohibit the bringing of suits. It was as competent for the legislature to do this, as to say that suits should not be brought against the representatives of deceased persons, until nine months after administration granted. The one has been held to form a necessary legislative exception out of the *522 statute of limitations; the same principle would, in my view, operate an exception in this case. In neither case is the exception created by the court, but by a construction of express legislative intention. The corporation, in this instance, acquiesced in the action of the legislature, and brought no suit during the pendency of the quo warranto; such acquiescence, I think, should not operate to its prejudice.
This is my opinion, but as the other members of the court have come to a different conclusion, my duty is discharged when I have stated my dissent, and the reasons therefor.